NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONI-SEAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> O'REILLY AUTOMOTIVE, INC., d/b/a O'REILLY AUTO PARTS, <br><br> Respondent. | Civ. No. 12-04568 <br><br> OPINION |

THOMPSON, U.S.D.J.

INTRODUCTION

This action arises out of Defendant O'Reilly Automotive, Inc.'s Motion to Dismiss for Lack of Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively, to Transfer the Case to the Western District of Missouri, Southern Division, pursuant to 28 U.S.C. § 1404(a). [Doc. No. 7]. Plaintiff Coni-Seal, Inc.,b opposes. [Doc. No. 10]. This motion was decided on review of the parties' written submissions pursuant to Federal Rule of Civil Procedure 78(b). Based on the reasons included herein, the Court denies O'Reilly Automotive, Inc.'s motion to dismiss or transfer.

BACKGROUND

The present action arises from a series of contractual claims concerning the sale of and payment for auto parts. Plaintiff Coni-Seal, Inc., ("Plaintiff"), is a wholesaler of general auto parts, and is incorporated and authorized to do business under the laws of New Jersey. [Doc. No. 1, hereinafter "Complaint," at ¶ 3]. Plaintiff asserts that at all relevant times to this action,

1

Plaintiff's sole office was in New Jersey, and all but two (2) employees[1] worked in-state. [Doc. No. 10-1, Pagano Aff. at ¶ 2]. Plaintiff now contends it has but one remaining employee located in New Jersey. [*Id.* at ¶ 21].

Plaintiff brings the current action against Defendant O'Reilly Automotive, Inc., ("O'Reilly Automotive"), a Missouri holding company formed on December 20, 2010, with its principal place of business in Missouri. [Doc. No. 8-4, Ex. B1]. Before December 20, 2010, it appears as though O'Reilly Automotive existed under the name, "O'Reilly Holdings, Inc.," although it is unclear from the evidence submitted if its structure and purpose have also changed. [*See* Doc. No. 8-4, Ex. B-1].

O'Reilly Automotive is either the parent or indirect parent of Missouri corporations O'Reilly Automotive Stores, Inc. ("Stores") and Ozark Purchasing, LLC ("Ozark") (referred to collectively hereinafter as, "O'Reilly").[2] [Doc. No. 8 at I, III.D]. Stores is in the business of selling auto parts through retail outlets. [Doc. No. 8-3, Ex. B at ¶ 8]. Ozark purchases auto parts from manufacturers, distributors, and importers. [*Id.* at ¶ 9]. None of these entities owns property in New Jersey, is registered to do business in New Jersey, or has employees, registered agents, or business or telephone listings in New Jersey. [*Id.* at ¶ 7-9].[3] Turning to the facts giving rise to the present cause of action, on or about June 2008 Plaintiff contacted Stores to

---

[1] One worked in Florida and another in Pennsylvania. [10-1, Pagano Aff. at ¶ 2]. O'Reilly disputes this, providing printouts from Plaintiff's website showing that Plaintiff advertised representatives in select locations worldwide. [Doc. No. 8-6, Ex. C].

[2] O'Reilly Automotive has submitted its motion on behalf of itself, Ozark, and Stores – at times in its analysis referring to all three collectively as "O'Reilly." This Opinion will follow suit, separating out the entities when necessary, and referring to all three collectively as "O'Reilly." Since the brief is submitted on behalf of all three entities, the arguments within will also be collectively referred to as "O'Reilly's."

[3] In the Complaint, Plaintiff alleged that O'Reilly operates 10 stores in New Jersey. [Complaint at ¶ 10]. In its brief supporting its motion to dismiss, O'Reilly denied this claim. [Doc. No. 8 at ¶ II]. Since Plaintiff has failed to dispute O'Reilly's denial in subsequent submissions, the Court treats O'Reilly's contentions that it owns no property in New Jersey as true.

2

negotiate a possible contract for the purchase and delivery of wholesale auto parts. [Doc. No. 10-1, Pagano Aff. at ¶ 4]. According to Plaintiff, contractual negotiations occurred via phone and email while Plaintiff was in New Jersey. [*Id.* at ¶ 10]. On or about May 26, 2009, Plaintiff entered into an agreement for auto parts (hereinafter, "Vendor Agreement"), [*id.* at ¶ 7], with representatives of Ozark and/or Stores, as is discussed in further detail below. Both Plaintiff and O'Reilly have submitted copies of slightly different versions of the agreement. [*See* Doc. Nos. 8-2, Ex. A-1 and 10-2, Ex. A]. Plaintiff alleges a further agreement, referred to as the "Chassis" program, dated either about December 10, 2008 or 2009, [compare Complaint at ¶ 1 with Doc. No. 10-1, Pagano Aff. at ¶¶ 8, 9], but neither Plaintiff nor O'Reilly has produced a copy of said agreement.

Upon review of the two versions of the Vendor Agreement and the various submissions by Plaintiff and O'Reilly, the Court has noted several inconsistencies relevant to whether Plaintiff's contractual agreement was with Stores or Ozark, of which some will be noted here. First, on the copy of the Vendor Agreement submitted to the Court by O'Reilly, Ozark's name and address appear prominently on the first page. [Doc. No. 8-2, Ex. A-1]. In contrast, on the copy of the Vendor Agreement submitted by Plaintiff, the name "O'Reilly Automotive Inc." appears in place of Ozark, although listed with the same address. [Doc. No. 10-2, Ex. A]. Second, the terms in both versions of the agreement seem to largely govern Plaintiff's relationship with Stores (whose name at that time was "O'Reilly Auto Parts"), and the "Confidentiality" sections of both read: "The said agreement is between O'Reilly Auto Parts [Stores] and Coni-Seal [Plaintiff]." [*Id.*]. However, the Vice-President of Merchandise for Ozark Purchasing, Tom Seboldt, states in an affidavit that to his knowledge "neither Stores nor

3

another O'Reilly affiliated company had any direct contractual relationship with [Plaintiff]." [Doc. No. 8-1 at ¶ 17].

Third, each copy is signed by one Rob Payne, whose position is listed as "Merchandise Product Manager, O'Reilly Auto Parts (Stores)." [*Id.*]. But in a later affidavit submitted by O'Reilly, Mr. Payne states that his position at the time was as Product Manager for *Ozark*. [Doc. No. 8-7, Ex. D]. The other signatory aside from Plaintiff is a Robert W. Suter, later stated to have been another representative of Ozark. [Doc. No. 8-1, Ex. A]. Finally, the Vendor Agreement has been described in the submissions from O'Reilly as both "a standard Ozark agreement" [Doc. No. 8 at III.A.] and a "standard O'Reilly document" [Doc. No. 8-1, Ex. A].

As for the relevant similarities between the two copies of the Vendor Agreement, Plaintiff's New Jersey address prominently appears on both documents under "Vendor Information". [Doc. Nos. 8-2, Ex. A-1 and 10-2, Ex. A]. In addition to general provisions concerning sale and delivery of auto parts, the Vendor Agreement requires Plaintiff to name Stores as an additional insured under Plaintiff's general liability insurance policy. [Doc. No. 10, Ex. A, Vendor Agreement at 1]. In this case, the insurer chosen by Plaintiff was Travelers Insurance Company, a New Jersey-based general liability insurance company. [Doc. No. 10-1, Pagano Aff. at ¶ 15]. Finally, the Vendor Agreement does not specify a court of jurisdiction, but includes a choice-of-law provision selecting Missouri law. [Doc. No. 8-2, Ex. A-1].

At first, contractual relations appear to have advanced untroubled. According to Plaintiff, the agreed upon services were performed in New Jersey and the auto parts at issue were shipped from Plaintiff's New Jersey warehouse to Missouri and other locations. [*Id.* at ¶ 11]. From mid-2009 to early 2011, business relations between Plaintiff and O'Reilly took place on a daily basis via telephone and email communications. [Doc. No. 10-1, Pagano Aff. at ¶ 11]. Plaintiff alleges

4

circa 5,000 e-communications between the parties, [*id.* at ¶ 16], and contends that O'Reilly mailed or deposited over 100 payments to Plaintiff in New Jersey banks or lockboxes, [*id.* at ¶ 19].

It is undisputed that all in-person communications occurred in Springfield, Missouri. [Doc. No. 14 at III]. O'Reilly paid for travel of Plaintiff's President, Frank Pagano, to Missouri for status meetings. [Doc. No. 10-1, Pagano Aff. at ¶ 17]. No O'Reilly representative ever traveled to New Jersey in conjunction with any contractual agreement with Plaintiff. [Doc. No. 8 at III.D].

Plaintiff alleges that in January of 2011, O'Reilly began to take improper deductions from its payments to Plaintiff, and to order reduced numbers of auto parts in violation of contract. [Complaint at ¶ 14]. As a result of these deductions and other actions, Plaintiff alleges, *inter alia*, breach of contract, unjust enrichment, and breach of an implied duty of good faith and fair dealing. [*See generally*, Complaint]. Plaintiff further requests the reasonable value, plus interest, of goods allegedly sold and delivered for which complete remuneration was not received. [*Id.*].

O'Reilly responds that this Court lacks sufficient basis to exercise personal jurisdiction over O'Reilly. [*See generally,* Doc. No. 8]. As an initial matter, O'Reilly argues that O'Reilly Automotive is the wrong party to name in the lawsuit, as it was not created until December 20, 2010, after any contractual agreement in issue was made. [*Id.* at I]. O'Reilly further contends that O'Reilly Automotive, Stores, and Ozark each have insufficient contacts with New Jersey to warrant the establishment of personal jurisdiction. [*Id.*]. O'Reilly concludes that the Court should either dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(2), or transfer the case to the Western District of Missouri, Southern Division. [*See generally, id.*].

5

DISCUSSION

The Court will first consider whether it may lawfully exercise personal jurisdiction over the O'Reilly entities before analyzing the appropriateness of transfer.

I.     **Personal Jurisdiction**

It is well settled that a plaintiff bears the burden of establishing personal jurisdiction once it is challenged by a defendant. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992). If relying on pleadings and affidavits, the plaintiff must present a prima facie case that jurisdiction exists. *See, e.g.*, *Neiman v. Rudolf Wolff & Co.,* 619 F.2d 1189, 1190 (7th Cir. 1980), *cert. denied,* 449 U.S. 920 (1980); *La Rose v. Sponco Mfg., Inc.,* 712 F. Supp. 455, 458 (D.N.J. 1989). The plaintiff must respond with more than mere allegations; the plaintiff must respond with actual proofs. *Patterson v. F.B.I.,* 893 F.2d 595, 604 (3d Cir. 1990).

Generally, "[a] district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the [] state" where it sits. *Metcalf v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Under New Jersey Court Rule 4:4-4, courts are statutorily authorized to exercise personal jurisdiction over nonresident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). To comport with the requirements of due process, a plaintiff must show that (1) the nonresident defendant has "certain minimum contacts with [the forum state]" and that (2) "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Court will consider each of these due process elements in turn.

6

### a. Minimum Contacts

In order to establish personal jurisdiction over a nonresident defendant, there must be sufficient "minimum contacts" between the defendant and the forum state to justify suit. *See Int'l Shoe Co.*, 326 U.S. at 316. The minimum contacts requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297-98, 314 (1980).

In categorizing sufficient minimum contacts, personal jurisdiction may be either general or specific. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200-01 (3d. Cir. 1998). A defendant is subject to *general* jurisdiction when it has continuous and systematic contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984). Specific jurisdiction, in contrast, is established when a nonresident defendant has "purposefully directed" his activities at a resident of the forum and the injury arises from, or is related to, those activities. *Gen. Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir. 2001) (citing *Burger King Corp. v. Rudzewiczi*, 471 U.S. 462, 472 (1985)). Put differently, there must be some act or acts by which a defendant "purposefully avails itself of the privilege of conducting activities in the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Pfundstein v. Omnicom Grp., Inc.*, 285 N.J. Super. 245, 251 (1995), such that the defendant should "reasonably anticipate being haled into court" there. *World-Wide Volkswagen Corp.*, 444 U.S. at 297; *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) ("Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state."). *See also O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 321 (3d Cir. 2007) (stressing the need for predictability such that defendants may "anticipate and control their jurisdictional exposure"). Minimum contacts analysis must be conducted on a case-by-case

basis, considering the totality of the circumstances.  *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001); *Blakely v. Continental Airlines, Inc.*, 164 N.J. 38, 67 (2000).

Before engaging in the heart of the minimum contacts analysis as it applies to this case, the Court will first dispose of O'Reilly's argument that O'Reilly Automotive, Inc. is not the correct party to be named in this lawsuit because (1) O'Reilly Automotive as presently incorporated did not exist at the time of contract; and (2) any contract that Plaintiff may have had was with Ozark, a subsidiary of O'Reilly.  [Doc. No. 8 at I].  In response, Plaintiff has not disputed that O'Reilly Automotive was formed after the moment of contract.  Instead, Plaintiff has asked in its responsive briefing for leave to amend the Complaint to add Ozark and Stores as defendants.  [Doc. No. 10].

Upon review of the evidence, the Court finds the matter insufficiently clear to make a final ruling on the correct party to be named in this suit, short of naming all three.  From the many conflicting facts as to whether the Vendor Agreement submitted to the Court was between Plaintiff and Stores or Plaintiff and Ozark; to the lack of clarity as to O'Reilly Automotive's existence before December 20, 2010 under a different name and its possible role as parent entity, the Court agrees with Plaintiff that further investigation is necessary given the interrelated nature of the three entities.  Plaintiff may thus amend the Complaint to include Stores and Ozark.

In anticipation of such an outcome, O'Reilly argues that even if the Court decides to consider the Complaint as against Stores, Ozark, or O'Reilly Automotive, personal jurisdiction is inappropriate because no O'Reilly representative either (1) initially solicited the contractual relationship, [Doc. No. 14 at II.B], or (2) visited the forum state, [Doc. No. 8 at IV.A.1.b], two traditional touchstones for finding jurisdiction.  *See, e.g.*, *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, n.5 (1996) (discussing the difficulty of

8

finding purposeful availment where "defendant is a 'passive' buyer . . . solicited as a customer of the plaintiff" and where defendant's only contacts with the state were "some telephone calls and letters"); *Mellon Bank*, 983 F.2d at 557 (finding that "[c]ontracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant," especially where the contract was executed at the behest of the resident, and finding that while not dispositive, "physical presence in the forum state . . . figures into the analysis"); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 149 (3d Cir. 1992) (finding visit to forum influential in minimum contacts analysis, where telephone calls and correspondence to New Jersey from Louisiana were accompanied by a meeting in New Jersey to close a loan).

Indeed, O'Reilly points to this Court's prior decision in *GMAC Real Estate, LLC v. Gate City Real Estate Co.*, No. Civ. 05-2253, 2005 WL 2656678 (D.N.J. Oct. 18, 2005), as an example of where this Court declined to find jurisdiction where mail and telephone communications were not supplemented by visits to the forum, or initiation of contractual relations by the nonresident defendant.  2005 WL 2656678 at *3.

While the Court acknowledges that the present facts are similar to those of *GMAC*, in keeping with the instruction that courts analyzing personal jurisdiction in contract claims should consider the "totality of the circumstances," *see, e.g., Remick*, 238 F.3d at 256, and favor a "realistic approach" over bright line rules, *Miller Yacht*, 384 F.3d 93 at 99, 100, the Court finds that Plaintiff here has succeeded where the previous plaintiff failed.

To start, actual presence in the forum and who initiated contractual relations is far from dispositive of the question of jurisdiction and purposeful availment.  While "actual presence" is generally factored into the jurisdictional determination, as this Court did in *GMAC*, the fact remains that "[i]n modern commercial business arrangements . . . communication by electronic

9

facilities, rather than physical presence, is the rule . . . . [and] actual territorial presence becomes less determinative." *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150-51 (3d. Cir. 2001). *See also, Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 178 (3d Cir. 2006) (finding that where defendant and plaintiff entered into a contractual relationship to exchange customized merchandise, defendant's lack of physical presence in New Jersey was less determinative); *Quill Corp v. North Dakota*, 504 U.S. 298, 308 (1992) ("[W]e have abandoned more formalistic tests that focused on a defendant's 'presence' within a State in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable . . . to require it to defend the suit in that State."); *Mellon Bank*, 960 F.2d at 1225 ("at least since the time of *International Shoe*, the physical presence of the defendant in the forum has not been regarded as a jurisdictional litmus test."); *Burger King*, 471 U.S. at 476 ("Jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State. . . . [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines," thus obviating the requirement of presence in the forum state); *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 324-25 (1989) (finding personal jurisdiction where defendant telephoned the New Jersey buyer to discuss contract, mailed contract to New Jersey for signing, and knowingly received payment from buyer who was New Jersey resident).

The Third Circuit has also lessened the significance of whether the nonresident defendant initiated the relationship, finding that "[i]n the commercial milieu, the intention to establish a common venture extending over a substantial period of time is a more important consideration." *Gen. Elec. Co.*, 270 F.3d at 151 (citing *Carteret*, 954 F.2d at 150). Where nonresident defendants have "regular and extensive communication with a person in [the forum] in order to

10

negotiate a business transaction that would . . . create rights and obligations among citizens of the state to perform certain duties," those defendants have availed themselves of the laws of the forum state. *See, e.g., Fiscus v. Combus Finance AG*, 2006 WL 1722607, *5 (D.N.J. June 20, 2006) (quoting *Grand Enter. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482-83 (3d Cir. 1993)). Although O'Reilly may have initially been a "passive" buyer, *see, e.g.*, *Vetrotex*, 75 F.3d at n. 5, responding to the solicitation of Plaintiff, *see, e.g., Mellon Bank*, 983 F.2d at 557, the extensive and involved contact between the parties over an extended period time, in addition to the alleged subsequent negotiations and the manufacturing of products for O'Reilly in New Jersey show a purposeful availment of this forum's resources.

At the same time as these traditional jurisdictional touchstones have been explained as less significant in the context of a modern commercial contract, the courts have also elaborated on additional factors that may serve as a basis to establish personal jurisdiction. Courts have found that a nonresident defendant who has sent payments to a forum state, engaged in extensive post-sale contacts, or breached a contract by submitting insufficient payment to a forum state bank is more likely to have exposed itself to the jurisdiction of the forum court. *Vetrotex*, 75 F.3d at 152-53 (1996); *Telcordia*, 458 F.3d at 178.

At present, Plaintiff argues that personal jurisdiction is appropriate because (1) the parties maintained extensive contact via email (over 5,000 emails, according to Plaintiff) and phone while Plaintiff was in New Jersey for more than two years, both before and after the execution of the two alleged agreements; (2) O'Reilly deposited over 100 payments in New Jersey banks, and the alleged contractual breaches occurred when O'Reilly made insufficient payments via those methods; (3) O'Reilly flew Plaintiff's Company President to Missouri from New Jersey multiple times, demonstrating knowledge that Plaintiff resided and operated in New Jersey; (4) the

11

provided copies of the Vendor Agreement clearly show that Plaintiff is located in the State of New Jersey; (5) the Vendor Agreement copies call for Plaintiff to acquire an insurance plan from the company of its choice to cover O'Reilly as an additional insured, and Plaintiff chose a New Jersey-based insurance company, further putting O'Reilly on notice; and (6) the auto parts relevant to contract performance were stored or otherwise "performed" in New Jersey.

Considering all of these factors, the Court finds prima facie evidence that O'Reilly engaged in "regular and extensive" communication with Plaintiff in order to negotiate a business transaction that would impact the rights and obligations of citizens of New Jersey, given the location of Plaintiff headquarters and warehouses, and that this, combined with the payments deposited to New Jersey banks and the breach that occurred there as a result of insufficient payment, the exchange of contract drafts while Plaintiff was in New Jersey, and O'Reilly's fair notice of Plaintiff's New Jersey residence given Plaintiff's headquarters and insurance plan, and from flying Plaintiff from New Jersey to Missouri for in-person meetings, there are sufficient minimum contacts in this case to support the exercise of personal jurisdiction.

Indeed, in the factually similar *Bachmann Software & Servs. v. Intouch Grp., Inc.*, Magistrate Judge Patty Shwartz found that where "the parties exchanged more than one thousand five hundred electronic communications" in regards to the contract at issue, and where the "agreement show[ed] the defendant knew that the plaintiff was based in New Jersey, and defendant sent plaintiff an executed copy of the new agreement to New Jersey," personal jurisdiction over the contractual claims was proper. 2008 WL 2875680, *8 (D.N.J. July 22, 2008) (internal citations omitted). Here, Plaintiff has provided evidence that the parties exchanged nearly 5,000 emails over the course of more than two years, O'Reilly extensively communicated with Plaintiff's New Jersey headquarters, and engaged in contract negotiations

while Plaintiff was in New Jersey. Thus, the Court finds that O'Reilly had sufficient minimum contacts with New Jersey for this Court to exercise personal jurisdiction.

### b. Traditional Notions of Fair Play and Substantial Justice

Having found that O'Reilly had sufficient minimum contacts with New Jersey to support the exercise of personal jurisdiction, the Court must analyze whether the exercise of personal jurisdiction in this case would be consonant with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113 (1987) (requiring minimum contacts *and* fairness in order to assert personal jurisdiction); *Fiscus*, 2006 WL 1722607 at * 8 (quoting *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701 (3d Cir. 1990)). "A nonresident defendant who has been found to have minimum contacts with the forum 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Lebel v. Everglades Marina, Inc.*, 115 N.J. at 328 (quoting *Burger King*, 471 U.S. at 477). Factors to be considered include "the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.*; *McKesson Corp. v. Hackensack Med. Imaging*, 197 N.J. 262, 279 (2009) (citing *Asahi*, 480 U.S. at 113) (internal quotation marks omitted); *Grand Enter. Grp., Ltd.*, 988 F.2d at 483.

In its briefing, O'Reilly does not specifically address the fair play and substantial justice requirement of personal jurisdiction. Any arguments O'Reilly does make in this direction, including the proffer of some evidence that the case may be more efficiently litigated in Missouri, are contained within its alternative motion to transfer to the Western District of Missouri, Southern Division, discussed below. Even taking those arguments into account, the

13

Court finds that exercising personal jurisdiction in this case would comport with traditional notions of fair play and substantial justice. While O'Reilly argues inconvenience in litigating in New Jersey, it does not provide a compelling argument of an undue burden in doing so. Moreover, New Jersey has a decided interest in protecting residents from breaches of contract and subsequent economic harm. This is especially so where, as here, the contracts were "partly negotiated and performed in New Jersey." *Bachmann*, 2008 WL 2875680 at *12. Finally, Plaintiff has a substantial interest in obtaining relief in New Jersey, given that Plaintiff feels the effects of any breach here.

### c. Conclusion

Based upon the above, the Court finds the exercise of personal jurisdiction over O'Reilly appropriate in this case.

## II. Transfer to the Western District of Missouri, Southern Division

Since the Court has found that it may properly exercise personal jurisdiction over the parties involved in this case, it will now turn to the question of venue transfer. O'Reilly argues that even if there is personal jurisdiction, this case should nonetheless be transferred under 28 U.S.C.A. 1404 to the Western District of Missouri, Southern Division. [Doc. No. 7]. Under § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought, [[f]or the convenience of parties and witnesses, in the interest of justice]." 28 U.S.C.A. § 1404(a). The moving defendant bears the burden of demonstrating that transfer is needed. *Jumara v. State Farm Ins. Co.*, 44 F.3d 873, 879 (3d Cir. 1995).

In concluding whether or not an action may have been brought in another district or division, the Court must determine whether the transferee district may exercise jurisdiction over all parties and whether venue would be proper in that district. *Shutte v. Armco Steel Corp.*, 431

F.2d 22, 24 (3d Cir. 1970). If the Court finds jurisdiction and venue to be proper, the Court then must balance several private and public factors before reaching a determination that transfer is appropriate. *Jumara*, 44 F.3d at 879. The Court's consideration must be an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Thus, the following analysis will begin by considering whether jurisdiction and venue are proper in this Court, and will then analyze the public and private interest factors in turn.

### a. Jurisdiction and Venue

Based upon the circumstances of this case, it appears that Missouri could indeed exercise jurisdiction over O'Reilly and that venue there would be proper. Among other factors contributing to this finding, the Court considers it significant that: (1) the three O'Reilly companies at issue are all Missouri corporations; (2) contractual relations were negotiated and cemented in part in Missouri; (3) Plaintiff performed services and produced auto parts that were sent to Missouri; and (4) Missouri is, assumedly, the location of any decision to breach contractual agreements with Plaintiff. Based upon these facts, the Court finds sufficient contacts with Missouri to justify the exercise of personal jurisdiction, and the occurrence of a sufficient portion of the factual nucleus in Missouri to justify venue there.

### b. Private Interest Factors

As developed by the Third Circuit and lower district courts, the private interests frequently considered in the transfer analysis include: (1) the plaintiff's preferred forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience to the parties in relation to their physical and financial situation; (5) the convenience of witnesses; and (6) the location of books and records. *See, e.g.*, *Jumara*, 55 F.3d at 879.

> i. *Plaintiff's Choice of Forum, O'Reilly's Preference, and Where the Claim Arose*

"A plaintiff's choice of forum is generally accorded great weight in the section 1404(a) analysis and should not be 'lightly disturbed.'" *LG Elec., Inc. v. First Inter. Computer, Inc.*, 138 F. Supp. 2d 574, 589 (D.N.J. 2001) (quoting *Jumara*, 55 F.3d at 879). While there are various factors that can undercut priority of Plaintiff's forum choice (such as a contractual forum selection clause indicating a different forum, *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 574 (D.N.J. 2000), or where Plaintiff resides in a different forum from that chosen), the main objection put forth by O'Reilly stems from this Court's previous finding that "[a] plaintiff's choice is accorded less deference where 'the central facts of a lawsuit occur outside the forum state.'" *Red Line Marine Liquidators Inc. v. Jarrett Bay Boat Works Inc.*, 2008 WL 4327001, *4 (D.N.J. 2008) (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 2d 473, 481 (D.N.J. 1993)).

O'Reilly argues that "there is little, if any, connection between the District of New Jersey and the operative facts of this case as alleged in the Complaint," because (1) any agreement at issue was completed in Springfield, Missouri as a standard Ozark document; (2) in-person meetings took place in Springfield; (3) Plaintiff delivered automobile parts to distribution centers outside of New Jersey; and (4) "the actions of which Plaintiff complains were all taken in Springfield, Missouri." [Doc. No. 8, IV.B.a].

But the Court agrees with Plaintiff that the present facts fail to overcome the traditional deference to Plaintiff's choice of forum, and that there is a substantial connection between New Jersey and the facts of the case. Despite the fact that all in-person communications occurred in Missouri and the decision to reduce payments to Plaintiff occurred there, many of the operative facts of the lawsuit occurred in New Jersey. First, Plaintiff initiated negotiations leading to any relevant agreement from New Jersey. Second, Plaintiff communicated with O'Reilly from New

Jersey, and engaged in contractual negotiations from New Jersey.  Third, Plaintiff stored and manufactured the products for which it claims not to have been paid in New Jersey. Fourth, the product was transmitted from New Jersey to various warehouses and distribution centers. Finally, the current cause of action arose when insufficient payment was placed in New Jersey banks.  Cf. *Bachmann*, 2008 WL 2875680 at * 9 (citing *Telcordia*, 458 F.3d at 178 for the proposition that a failure to place money in a New Jersey bank supported the finding of minimum contacts).  Thus, the Court concludes that the facts of the lawsuit and where the claim arose weigh in favor of defendant's choice of forum.

*ii.   Convenience of the Witnesses and Parties*

The Court likewise fails to find in favor of O'Reilly as to the convenience of the parties and witnesses.  O'Reilly argues that the Western District of Missouri would be "much more convenient to the likely witnesses in this case," because the actions complained of are those of O'Reilly, and O'Reilly witnesses reside in the Western District.  [Doc. No. 8 at IV.B.2.c]. O'Reilly also cites to Plaintiff's global presence as evidence that the Western District of Missouri is not *inconvenient* for Plaintiff.  [*Id.*].

O'Reilly does not, however, offer up any specific hardship to witnesses that would result from travel to New Jersey, or contend that key witnesses would be unable to travel there. O'Reilly's further assertions that Plaintiff would not be inconvenienced by travel to Missouri due to its global presence (as evidenced by the Plaintiff's website advertisements of representatives worldwide, *supra*, note 1) and history of travel to Springfield are counterbalanced by Plaintiff's claims of workforce reduction and the contention that O'Reilly funded those trips.  Thus, O'Reilly has failed to meet its burden of demonstrating that witness convenience weighs in favor of transfer to Missouri.

### iii. The Location of Books and Records

The Court agrees with O'Reilly that the location of books and records is a neutral factor, as each party assumedly has their documents in their preferred forum, and these documents arguably could be produced in either Missouri or New Jersey.

### iv. Conclusion

On balance, the Court finds that the private interest factors do not weigh in favor of transfer.

### c. Public Interest Factors

The public interest factors frequently considered in response to a transfer motion include: (1) the enforceability of judgment; (2) practical considerations concerning the ease, expedience, or cost of trial; (3) the relative administrative difficulty resulting from possible court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-80.

### i. The Enforceability of the Judgment

The Court finds that the enforceability of judgment factor weighs in favor of O'Reilly, in that the various O'Reilly entities hold assets in Missouri but hold none in New Jersey. Thus, any possible award of damages to Plaintiff would likely be easier to enforce in Missouri.

### ii. Practical Considerations and Relative Administrative Difficulty

In evaluating the practical considerations of the ease, expediency, and cost of trial, O'Reilly's most persuasive argument is that cases proceed to trial faster in the Western District of Missouri than in the District of New Jersey. [Doc. Nos. 8 at IV.B.2.f; 18-8, Exhibit E]. The Court notes that based upon the submitted evidence there does appear to be a longer interval

between the initial filing and trial in the District of New Jersey than in the Western District of Missouri.  However, the Court also notes that the *disposition* of cases in New Jersey as compared with Western Missouri occurs roughly in the same amount of time.  [Doc. No. 18-8, Exhibit E].  Otherwise, O'Reilly simply argues that trial will be less costly and more efficient in Missouri because O'Reilly and its various witnesses are located there.  [Doc. No. 8 at IV.B.2.f].  The Court does not consider these inconveniences as rising to the level of overcoming Plaintiff's forum choice for the District of New Jersey.

### iii.  The Local Interest in Deciding Local Controversies and Public Policy

The Court finds that Missouri's interest in this case does not trump New Jersey's interest in protecting one of its residents from a breach of contract.  Plaintiff is a New Jersey corporation that produced auto parts in New Jersey, and suffered damage from insufficient payment for services performed at least partially in New Jersey.

### iv.  Familiarity of the Trial Judge with the Applicable State Law

Based upon the copies of the Vendor Agreement that have been submitted to this Court, Missouri law governs the agreement.  Missouri courts would undoubtedly be more familiar with Missouri law than this Court.  However, given that it is not uncommon for district courts to consider the laws of other jurisdictions, *Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008), this factor is also insufficient to counter the heavy burden O'Reilly bears in attempting to overcome Plaintiff's choice of forum.

### v.  Conclusion

Based upon the above, the Court fails to find that the public interest factors weigh in favor of transfer in this case.

## CONCLUSION

For the foregoing reasons, the Court denies O'Reilly's Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, to Transfer the Case to the Western District of Missouri, Southern Division.  An appropriate order accompanies this opinion.

/s/Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

Dated: <u>14th</u> of January, 2012